ALEC S. BRACKEN (USB 17178)
CONTIGO LAW
PO BOX 249
Midvale, Utah 84047
Phone: 801-980-9430
Email: alec@contigo.law
Attorney for Petitioners

UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

| | |
|---|---|
| Isaias Geovanny Arevalo Llumiguano, et. al.<br><br>Petitioners<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security,<br><br>TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement,<br><br>KELEI WALKER, in her official capacity as ICE Field Officer Director,<br><br>BRENDEN MORROW, in his official capacity as the warden of the Uinta County Jail,<br><br>TODD BLANCHE, in his official capacity as the United States Attorney General,<br><br>The Executive Office for Immigration Review<br><br>United States Immigration and Customs Enforcement.<br><br>Respondents | Civil No.: 26-CV-174-SWS<br><br>PETITIONER'S MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e), OR IN THE ALTERNATIVE, FOR RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. P. 60(b), AND TO REINSTATE PETITIONER'S HABEAS CLAIMS<br><br><u>IMMIGRATION HABEAS CASE</u> |

## I. STANDARD FOR RECONSIDERATION

Federal Rules of Civil Procedure 59(e) and 60(b) permit a district court to reconsider and vacate a prior judgment when necessary to correct clear legal error, prevent manifest injustice, or address extraordinary circumstances that undermine the integrity of the judicial process. While reconsideration is an extraordinary remedy, it is appropriate where the court has overlooked controlling law, misunderstood material facts, or entered a judgment that would produce an unjust result. *See Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

### A. Reconsideration Is Appropriate Under Rule 59(e)

Rule 59(e) authorizes a court to alter or amend a judgment where necessary to correct clear error of law or prevent manifest injustice. *Servants of the Paraclete*, 204 F.3d at 1012. A Rule 59(e) motion is particularly appropriate when the court has misapprehended the facts, a party's position, or the controlling law governing the dispute. *Id.*

Reconsideration under Rule 59(e) is warranted here because the Court's dismissal order rests upon assumptions regarding the legality of Petitioner's removal that were never established by Respondents and were expressly disputed by Petitioner. In concluding that Petitioner's claims became moot upon his removal, the Court overlooked material facts concerning the continued pendency of Petitioner's appeal before the Board of Immigration Appeals, the absence of any identified final administrative order authorizing removal, and the continuing availability of meaningful relief. To the extent the Court's mootness determination was predicated upon the assumption that Respondents lawfully removed Petitioner pursuant to a valid and executable order of removal, reconsideration is necessary to correct clear legal error and prevent manifest injustice.

**B. Reconsideration Is Appropriate Under Rule 60(b)(1)**

Rule 60(b)(1) authorizes relief from judgment based upon "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The Supreme Court has confirmed that the term "mistake" encompasses judicial errors of law and permits relief where a court has entered judgment based upon an erroneous legal conclusion. *Kemp v. United States*, 596 U.S. 528, 533-39 (2022).

Relief under Rule 60(b)(1) is appropriate where the Court's dismissal order rests upon a mistaken understanding of the legal and factual circumstances surrounding Petitioner's removal. As discussed below, the Court treated Petitioner's removal as though it had been executed pursuant to a valid final order and further concluded that removal automatically extinguished the Court's ability to provide effective relief. Because those conclusions are legally and factually disputed, Rule 60(b)(1) provides an independent basis for vacating the judgment and reconsidering the Court's mootness determination.

**C. Reconsideration Is Appropriate Under Rule 60(b)(6)**

Rule 60(b)(6) authorizes relief from judgment for "any other reason that justifies relief" and exists to address extraordinary circumstances where enforcement of a judgment would work a substantial injustice. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). The Tenth Circuit has recognized that Rule 60(b)(6) should be applied where necessary to accomplish justice and preserve confidence in the integrity of judicial proceedings.

Extraordinary circumstances exist here. Petitioner filed a habeas petition challenging the legality of his detention. The Court reviewed that petition, determined that summary dismissal was unwarranted, and issued an Order to Show Cause requiring Respondents to justify Petitioner's detention. Before the Court could adjudicate the merits of the petition, Respondents removed Petitioner

from the United States and subsequently argued that their own actions deprived the Court of jurisdiction.

If allowed to stand, the dismissal order would effectively permit Respondents to defeat judicial review by removing a habeas petitioner after jurisdiction has attached and then invoking that removal as a basis for dismissal. Such a result would undermine the fundamental purpose of habeas corpus and create a substantial risk that executive action could frustrate meaningful judicial review. Under these extraordinary circumstances, relief under Rule 60(b)(6) is appropriate to prevent manifest injustice and preserve the Court's ability to adjudicate the legality of Respondents' conduct.

## II. THE COURT ERRED BY FAILING TO ADDRESS WHETHER RESPONDENTS CREATED THE ALLEGED MOOTNESS THROUGH THEIR OWN CONDUCT

The Court's dismissal order analyzes mootness as though Petitioner's removal were an external event occurring independently of the challenged conduct. It was not. The alleged mootness upon which the Court relied was created entirely by Respondents themselves. Yet the Court never addressed the well-established principle that a party may not manufacture mootness through its own unilateral actions and then invoke those actions as a basis for dismissal.

The Supreme Court has repeatedly recognized that voluntary cessation of challenged conduct does not ordinarily deprive a federal court of jurisdiction. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc*., 528 U.S. 167, 189 (2000). To the contrary, a defendant asserting mootness bears a "heavy burden" of demonstrating that subsequent events have completely and irrevocably eradicated the effects of the challenged conduct and that there is no reasonable possibility the dispute remains live. *Id.* The purpose of this doctrine is straightforward: without it, a party could evade judicial review simply by taking unilateral action once litigation commences and then arguing that the court has been stripped of jurisdiction.

That concern is particularly acute here. Petitioner filed a habeas petition challenging the legality of his detention. After reviewing the petition, this Court determined that summary dismissal was inappropriate and issued an Order to Show Cause directing Respondents to justify Petitioner's continued detention. Before the Court could adjudicate the merits of the petition, Respondents removed Petitioner from the United States. Respondents then immediately argued that the very removal they carried out rendered the case moot.

The Court's order accepts that premise without addressing whether Respondents may rely upon their own conduct to extinguish jurisdiction. That omission constitutes clear legal error. Mootness doctrine exists to determine whether a genuine controversy continues to exist between the parties. It does not permit a litigant to create the circumstances upon which mootness depends and then use those circumstances as a shield against judicial review. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

The problem is particularly pronounced because Petitioner contends that the removal itself was unlawful. Respondents removed Petitioner while his appeal before the Board of Immigration Appeals remained pending and without ever identifying a final administrative order authorizing removal. Having allegedly removed Petitioner without lawful authority, Respondents now seek to benefit from the consequences of that removal by arguing that no case remains. Federal courts have long rejected attempts to manufacture mootness through the very conduct being challenged. *See Friends of the Earth*, 528 U.S. at 189.

An immigration judge's removal order does not become administratively final while a timely appeal remains pending before the Board of Immigration Appeals because "[a]n order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final ... [u]pon waiver of appeal by the respondent" or "[u]pon expiration of the time allotted for an

appeal if the respondent does not file an appeal within that time," or when the BIA renders its decision. 8 C.F.R. § 1241.1(a)-(c).

Moreover, the rationale underlying the voluntary cessation doctrine applies with even greater force in the habeas context. If Respondents may defeat jurisdiction simply by removing a detainee after a habeas petition has been filed, then executive officials would possess the unilateral ability to determine which detention challenges receive judicial review and which do not. Such a rule would transform habeas corpus into a race against removal and would allow the government to avoid adverse rulings by altering the petitioner's circumstances before the court can adjudicate the legality of the challenged detention.

The Court's order never addresses these concerns. It never analyzes voluntary cessation. It never considers whether Respondents created the alleged mootness. It never evaluates whether Respondents have met the heavy burden imposed by Friends of the Earth. Instead, it assumes that Petitioner's removal automatically extinguished the controversy. Because the Court failed to address the doctrine directly applicable to the circumstances before it, reconsideration is warranted under Rule 59(e) and Rule 60(b).

## III. RESPONDENTS MAY NOT DEFEAT FEDERAL HABEAS JURISDICTION THROUGH UNILATERAL REMOVAL OF THE PETITIONER AFTER JURISDICTION ATTACHED

The Court's dismissal order effectively permits Respondents to extinguish federal habeas jurisdiction through their own unilateral actions after jurisdiction has already attached. That proposition is inconsistent with longstanding habeas jurisprudence and threatens the fundamental role of federal courts in reviewing executive detention.

There is no dispute that this Court possessed jurisdiction over Petitioner's habeas petition. Petitioner filed his petition pursuant to 28 U.S.C. § 2241. The Court reviewed the petition, determined

that summary dismissal was unwarranted, and entered an Order to Show Cause directing Respondents to respond and demonstrate why the writ should not issue. At that point, jurisdiction had unquestionably attached. The legality of Petitioner's detention was properly before the Court, and Respondents were obligated to justify that detention through the judicial process.

Instead of permitting that process to proceed, Respondents removed Petitioner from the United States before the Court could adjudicate the merits of the petition and now contend that their own actions divested the Court of authority to provide relief. The Supreme Court has repeatedly rejected analogous attempts to defeat habeas jurisdiction through post-filing governmental action.

*In Ex parte Endo*, 323 U.S. 283 (1944), the government argued that a habeas petition became ineffective after the petitioner was transferred from the custodial authority originally named in the petition. The Supreme Court rejected that argument, holding that once jurisdiction attaches in a habeas proceeding, subsequent governmental action does not automatically deprive the court of authority to adjudicate the legality of the detention. *Id.* at 304-07. The Court recognized that permitting the Executive Branch to defeat jurisdiction through its own unilateral conduct would substantially undermine the purpose of habeas corpus itself.

The same principle applies here. If the government may remove a habeas petitioner after a federal court has assumed jurisdiction and then invoke that removal as a basis for dismissal, jurisdiction would effectively exist only at the discretion of the Executive Branch. A federal court's authority to review detention would become contingent upon whether DHS elected to remove the petitioner before the court could rule. That is not how habeas jurisdiction operates.

The Supreme Court reinforced this principle in *Carafas v. LaVallee*, 391 U.S. 234 (1968). There, the petitioner was released from physical custody while his habeas petition remained pending. The Court rejected the argument that release automatically deprived the federal courts of jurisdiction,

explaining that jurisdiction, once properly invoked, is not destroyed by subsequent changes in the petitioner's custodial status. Id. at 238. The Court further recognized that continuing legal consequences flowing from the challenged action preserve the existence of a live controversy. *Id.* at 237-38.

Likewise, in *Spencer v. Kemna*, 523 U.S. 1 (1998), the Supreme Court reaffirmed that habeas cases do not necessarily become moot merely because the petitioner's physical detention has ended. Rather, courts must determine whether continuing legal consequences or collateral restraints remain. *Id.* at 7-14. The inquiry is not limited to whether the petitioner remains behind bars on the day the court issues its decision.

Here, the Court's ruling effectively adopts a contrary principle. Under the logic of the dismissal order, DHS may arrest an individual, detain him, litigate a habeas challenge, remove him before adjudication, and then argue that the removal itself extinguishes federal jurisdiction. Such a rule would allow the Executive Branch to determine which habeas petitions receive judicial review and which do not. Any detention challenge could be rendered academic simply by deporting the petitioner before the court reaches the merits.

The implications extend far beyond this case. If accepted, Respondents' position would permit DHS to defeat virtually every immigration habeas petition challenging detention by removing the detainee before adjudication. Habeas corpus would cease to function as a meaningful restraint on executive detention and instead become a race between judicial review and removal. The Supreme Court's decisions in Endo, Carafas, and Spencer foreclose such a result.

Because jurisdiction attached when the petition was filed and because Respondents cannot defeat that jurisdiction through unilateral conduct undertaken after the commencement of litigation, the Court erred in concluding that Petitioner's removal automatically deprived it of authority to adjudicate

the legality of Respondents' actions. Reconsideration is therefore warranted under Rules 59(e) and 60(b).

### IV. PETITIONER REMAINS "IN CUSTODY" FOR PURPOSES OF HABEAS BECAUSE RESPONDENTS CONTINUE TO IMPOSE PRESENT LEGAL RESTRAINTS ON HIS LIBERTY

The Court's dismissal order appears to assume that Petitioner's removal from the United States automatically terminated custody for purposes of federal habeas jurisdiction. Supreme Court precedent establishes otherwise. The concept of "custody" under the federal habeas statutes extends beyond physical incarceration and includes substantial restraints on liberty imposed by governmental action. Where such restraints continue to exist, a case does not become moot merely because the petitioner is no longer confined within the walls of a detention facility.

In *Jones v. Cunningham*, 371 U.S. 236 (1963), the Supreme Court rejected the proposition that habeas jurisdiction is limited to individuals who remain physically imprisoned. The Court explained that a petitioner remains "in custody" whenever the government imposes significant restraints upon liberty that are not shared by the public generally. *Id*. at 242-43. Similarly, in *Hensley v. Municipal Court*, 411 U.S. 345 (1973), the Court held that physical incarceration is not required so long as the petitioner remains subject to substantial restraints arising from the challenged governmental action. *Id*. at 351-53.

Likewise, in *Carafas v. LaVallee*, 391 U.S. 234 (1968), the Supreme Court held that a habeas action did not become moot merely because the petitioner had completed his sentence and been released from physical custody. The Court recognized that continuing legal disabilities and collateral consequences flowing from the challenged action preserved the existence of a live controversy. Id. at 237-38. The principle underlying these cases is clear: habeas jurisdiction does not turn solely on

whether a petitioner remains confined in a jail cell on the date the court issues its decision. Rather, courts must examine whether governmental action continues to impose present restraints on liberty.

Those restraints unquestionably remain here.

Petitioner remains subject to the direct consequences of Respondents' allegedly unlawful removal. He has been excluded from the United States and prevented from returning to the country where he resided before Respondents executed the challenged removal. He remains unable to return to pursue his immigration proceedings in person. He remains unable to meaningfully participate in the administrative appeal that he contends was still pending at the time of his removal. Most importantly, he remains subject to the legal consequences flowing directly from the very governmental conduct challenged in this case.

The Court's mootness analysis presupposes that Petitioner's removal lawfully terminated all restraints on his liberty. But that conclusion depends entirely upon the assumption that the removal itself was lawful. Petitioner disputes that premise. If Respondents lacked authority to remove Petitioner because no final order of removal existed, then the resulting exclusion from the United States is not a collateral consequence of lawful government action, it is the continuing effect of the very unlawful conduct being challenged. In that circumstance, the restraint has not ended; it has merely changed form.

Nor is the relief sought in this proceeding limited to release from a particular detention facility. Petitioner sought judicial review of Respondents' exercise of detention authority and the legality of the actions taken against him. Respondents now contend that by removing Petitioner from the United States they have extinguished the Court's ability to review those actions. Yet the practical effect of the removal is that Petitioner remains subject to ongoing governmental restraints that prevent him from returning to the United States and place him beyond the reach of the very proceedings that were pending when he was removed.

Indeed, accepting Respondents' position would create a troubling paradox. Under Respondents' theory, an allegedly unlawful removal would immediately extinguish jurisdiction precisely because the removal was successful. The more effectively the government deprived a petitioner of access to the United States and to the courts, the stronger its mootness argument would become. The Supreme Court's custody jurisprudence does not support such a result.

Because Petitioner continues to suffer substantial legal restraints arising directly from the challenged governmental conduct, he remains "in custody" for purposes of habeas jurisdiction, and meaningful relief remains available. The Court therefore erred in concluding that Petitioner's removal automatically extinguished the controversy before it. Reconsideration is warranted under Rules 59(e) and 60(b).

## V. EFFECTIVE RELIEF REMAINS AVAILABLE

The Court's mootness determination rests upon the conclusion that no meaningful relief remains available because Petitioner has already been removed from the United States and therefore can no longer benefit from a bond hearing. Respectfully, that conclusion overlooks both the nature of the claims before the Court and the broad equitable authority federal courts possess to remedy unlawful governmental conduct.

A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. As long as some form of meaningful relief remains available, the controversy remains live and federal jurisdiction continues to exist.

Meaningful relief remains available here.

First, the Court may determine whether Respondents acted lawfully when they removed Petitioner while this habeas proceeding and Petitioner's administrative appeal remained pending. If the

Court concludes that the removal was unlawful, it may declare Respondents' actions unlawful and vacate legal consequences flowing from that conduct.

Second, the Court may order restoration of the status quo ante. Prior to Respondents' actions, Petitioner was physically present in the United States, pursuing an appeal before the Board of Immigration Appeals, and litigating a habeas petition challenging the legality of his detention. Those circumstances can be restored.

Third, the Court may order Respondents to facilitate Petitioner's return to the United States. The Supreme Court has expressly recognized that removal does not necessarily prevent a court from providing meaningful relief because courts retain authority to order the government to facilitate a petitioner's return when necessary to remedy unlawful governmental action. *Nken v. Holder*, 556 U.S. 418, 435 (2009). In discussing the consequences of removal, the Supreme Court explained that removal does not categorically foreclose effective judicial relief because the government possesses the ability to return removed individuals to the United States if warranted by a later judicial determination. *Id.*

Fourth, if Petitioner's return is ordered, the Court may direct Respondents to provide custody proceedings consistent with governing law, including any relief that would have been available had Respondents not removed Petitioner during the pendency of this litigation.

Respondents repeatedly characterize this case as though the only relief ever sought was release from detention. That characterization is incorrect. Petitioner sought judicial review of the legality of Respondents' detention authority and the actions taken pursuant to that authority. Respondents cannot avoid review simply by altering Petitioner's circumstances before the Court reaches the merits. If that were the rule, executive officials could evade judicial review in virtually every detention case by removing the detainee before adjudication and then arguing that the removal itself extinguished the court's ability to act.

The availability of declaratory relief, restoration of the status quo ante, facilitation of return, and renewed custody proceedings demonstrates that meaningful relief remains available. Because the Court retains the ability to grant effective relief, this matter is not moot.

## VI. PETITIONER IS NOT CHALLENGING A FINAL REMOVAL ORDER BECAUSE NO FINAL REMOVAL ORDER EXISTED

Respondents may contend that the relief sought by Petitioner constitutes an indirect challenge to a removal order governed exclusively by 8 U.S.C. § 1252. That argument misunderstands the nature of Petitioner's claim.

Petitioner is not seeking review of a final order of removal. Petitioner is not asking this Court to reverse a Board of Immigration Appeals decision. Petitioner is not challenging the merits of any final administrative removal determination. Rather, Petitioner's position is that no final removal order existed at the time Respondents removed him from the United States.

Under the Immigration and Nationality Act, an order of removal becomes final only upon "a determination by the Board of Immigration Appeals affirming such order" or upon "the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). The regulations likewise provide that a removal order does not become administratively final while a timely appeal remains pending before the Board. 8 C.F.R. § 1241.1.

Here, Petitioner alleged that he timely appealed the Immigration Judge's decision to the Board of Immigration Appeals and that the appeal remained pending when Respondents removed him. Respondents never produced a Board decision dismissing the appeal. They never produced a withdrawal of the appeal. They never identified any final administrative determination authorizing removal. Consequently, the issue before this Court is not whether a final removal order should be

upheld or set aside. The issue is whether Respondents possessed any lawful authority to remove Petitioner at all.

That distinction is critical. Courts have consistently recognized that habeas jurisdiction remains available where a petitioner challenges governmental conduct undertaken in the absence of lawful authority rather than seeking review of a final removal order itself. Petitioner's claim is precisely that Respondents acted without a final executable order and thereby exceeded the authority granted by Congress.

Accordingly, this case does not present a challenge to a final removal order. It presents a challenge to Respondents' alleged execution of a removal in the absence of a final removal order. Because no final order existed, the jurisdictional limitations associated with judicial review of final removal orders are inapplicable.

## VII. THE COURT'S RULING CREATES MANIFEST INJUSTICE AND INCENTIVIZES UNLAWFUL REMOVALS

Even apart from the specific legal errors discussed above, reconsideration is warranted because the practical consequences of the Court's ruling produce a manifest injustice and threaten the fundamental role of habeas corpus as a safeguard against unlawful executive detention.

The sequence of events in this case illustrates the problem. Petitioner filed a habeas petition challenging the legality of his detention. This Court reviewed the petition and determined that summary dismissal was unwarranted. The Court then issued an Order to Show Cause requiring Respondents to justify Petitioner's detention and explain why the writ should not issue. Before the Court could adjudicate the merits of that challenge, Respondents removed Petitioner from the United States. Respondents then argued that the removal they carried out rendered the case moot. The Court accepted that argument and dismissed the petition.

If allowed to stand, that framework creates a troubling precedent. Under such a rule, the government need only wait until a habeas petition is filed, remove the petitioner before the court reaches the merits, and then invoke the removal itself as a basis for dismissal. Judicial review would exist only until DHS acts quickly enough to prevent it. The practical consequence would be that the Executive Branch, rather than the Judiciary, determines which habeas petitions receive meaningful review and which do not.

That result is fundamentally incompatible with the purpose of habeas corpus. The Suspension Clause and the writ itself exist to ensure that executive detention remains subject to meaningful judicial scrutiny. As the Supreme Court explained in *Boumediene v. Bush*, 553 U.S. 723 (2008), the writ of habeas corpus is intended to serve as a critical check on executive power and to prevent unlawful detention from being insulated from judicial review. *Id.* at 745-46. Habeas corpus loses much of its force if the Executive may avoid judicial review by altering a petitioner's circumstances before the court can rule.

The danger is particularly acute in immigration detention cases. Under the reasoning of the dismissal order, any immigration habeas petition challenging detention could potentially be defeated through removal before adjudication. A detainee could invoke federal jurisdiction, obtain an order requiring the government to justify its detention authority, and yet still be deprived of judicial review if DHS removes the detainee before the court issues a decision. Such a system would transform habeas corpus into a race between judicial review and executive action. The more expeditiously the government acts, the less likely meaningful judicial review becomes.

That concern is magnified where, as here, Petitioner contends that the removal itself was unlawful because no final executable order existed. If Respondents may remove an individual without lawful authority and then rely upon that same removal to defeat jurisdiction, the government effectively

profits from the very conduct being challenged. Such a result is contrary to the principles underlying both habeas corpus and the voluntary cessation doctrine and would create incentives for future removals undertaken before courts can resolve pending challenges.

The Supreme Court has repeatedly recognized that habeas jurisdiction, once properly invoked, is not defeated by unilateral governmental action occurring after the commencement of litigation. *See Ex parte Endo,* 323 U.S. 283, 304-07 (1944); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). To hold otherwise would permit the Executive Branch to extinguish judicial review through its own conduct and thereby place challenged detention beyond the reach of the courts, the precise result the writ of habeas corpus was designed to prevent. *See Boumediene v. Bush*, 553 U.S. 723, 745 (2008). Yet that is precisely the practical effect of the ruling entered here. The Court's decision allows Respondents to accomplish indirectly what they could not accomplish directly: the termination of a pending habeas proceeding through executive action undertaken after jurisdiction attached.

Rule 59(e) exists in part to prevent precisely this type of manifest injustice. Allowing the dismissal order to stand would not merely affect this Petitioner. It would establish a framework under which the Executive Branch could effectively control the availability of judicial review in future detention cases. Because such a result is fundamentally inconsistent with the historic function of habeas corpus and the separation of powers, reconsideration is necessary to correct manifest injustice and preserve the Judiciary's role in reviewing executive detention.

## VIII. CONCLUSION

This case was not rendered moot by the simple fact of Petitioner's removal from the United States. Rather, the Court's mootness determination rests upon several assumptions that were never established by Respondents and were never adjudicated by the Court.

Most importantly, Respondents never demonstrated that a final executable order of removal existed at the time Petitioner was removed. Respondents never informed the Court that Petitioner maintained a pending appeal before the Board of Immigration Appeals. Respondents never produced a decision from the Board dismissing that appeal. Respondents never produced a withdrawal of the appeal. Respondents never established that Petitioner's removal had been authorized by a final administrative order. Nor did Respondents meaningfully address Petitioner's contention that the removal itself was unlawful because no final order existed.

Instead, Respondents merely asserted that Petitioner was no longer detained and therefore had effectively received the relief sought. The Court accepted that premise without resolving the threshold issue of whether Respondents possessed lawful authority to remove Petitioner in the first place.

As a result, the Court's mootness determination rests upon an incomplete factual record and an unresolved legal question at the center of this dispute. Before a case may be dismissed as moot based upon a petitioner's removal, Respondents must establish that the removal was lawfully executed pursuant to a final and executable order. They never did so here.

Moreover, even assuming Petitioner was removed, Respondents cannot manufacture mootness through the very conduct being challenged. Jurisdiction attached when Petitioner filed his habeas petition and this Court issued its Order to Show Cause. Respondents thereafter removed Petitioner and now seek to invoke that removal as a basis for dismissal. Federal courts have repeatedly rejected attempts to defeat jurisdiction through unilateral governmental action undertaken after litigation has commenced. To hold otherwise would permit the Executive Branch to determine which habeas petitions receive judicial review and which do not.

Nor has this case become incapable of meaningful relief. If Petitioner's removal was unlawful, this Court retains authority to declare that removal unlawful, restore the status quo ante, order

Respondents to facilitate Petitioner's return, and direct any further custody proceedings required by law. Because meaningful relief remains available, this controversy remains live.

Finally, the broader implications of the Court's ruling underscore why reconsideration is necessary. Under the framework adopted by the dismissal order, a detainee may file a habeas petition, a federal court may determine that the petition warrants a response, the government may remove the petitioner before adjudication, and the government may then obtain dismissal by arguing that the removal it carried out extinguished the controversy. Such a rule would place the availability of judicial review largely within the control of the Executive Branch and would undermine the historic function of habeas corpus as a safeguard against unlawful detention and executive overreach.

For all of these reasons, Petitioner respectfully requests that the Court alter or amend its judgment pursuant to Rule 59(e), or alternatively grant relief from judgment pursuant to Rule 60(b), vacate its dismissal order, reinstate Petitioner's habeas claims, reopen these proceedings, and grant such further relief as justice requires, including restoration of the status quo ante and any additional relief necessary to remedy Petitioner's unlawful removal.

DATED: June 12, 2026

Respectfully submitted,

/S/ ALEC S. BRACKEN
ALEC S. BRACKEN (USB 17178)
CONTIGO LAW
PO BOX 249
Midvale, Utah 84047
Phone: 801-980-9430
Email: alec@contigo.law
Attorney for Petitioners